# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **BENJAMIN FRANKLIN-SEQUOYAH CRAFT-RENDON AND SHANNON KATHLEEN BEBE**, Plaintiff | § § § § | |
| **v.** | § § § | Civil Action No. 4:14-cv-02675 |
| **TRANSCANADA KEYSTONE PIPELINE, LP, TRANSCANADA CORPORATION, WOOD COUNTY, TEXAS,** , Defendant | § § § § | |

## FIRST AMENDED COMPLAINT

### PARTIES

Plaintiffs are Benjamin Franklin-Sequoyah Craft-Rendon and Shannon Kathleen Bebe, individuals that are citizens under the laws of Texas.

Defendants are:

1. TransCanada Keystone Pipeline, LP, a foreign limited partnership registered in Delaware, with principal place of business at 717 Texas St., Houston, TX 77002;

2. Wood County, Texas a government entity, state/municipal governmental organization of a state or municipal government, who may be served by a delivering a copy of the summons of the complaint to the County Judge.

Defendant 1 shall be referred to herein as TransCanada. Defendant 2 shall be referred to herein as Wood County.

## JURISDICTION

The Court has federal question jurisdiction over the lawsuit because the suit arises under 42 U.S.C. 1983, a federal statute.

The court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

## VENUE

Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred.

## FACTS

In or around the month of September, 2012, Defendants TransCanada began construction on the part of its "Keystone XL Pipeline that ran through Wood County, Texas. Multiple groups of individuals including local property owners who stood to lose their lands as a result of the application of eminent domain or Defendant Transcanada's misleading

tactics to garner consent, as well environmentally concerned individuals and certain important members of the Native American Community continued their ongoing campaign of political mobilization complete with civil disobedience tactics to delay and/or halt the construction of this pipeline by TransCanada.

On 9/25/12 at around 10:00 a.m., on the private property of David Daniels, over which the above-mentioned pipeline was being installed without the consent of said David Daniels, Plaintiff Benjamin Franklin Craft-Rendon and Shannon Kathleen Bebe, with the support of a politically diverse, active and concerned group of individuals, and with the full permission of David Daniels in an attempt to delay construction of the above-mentioned pipeline voluntarily secured themselves to the back digging scoop of one of Transcanada's pieces of heavy digging equipment. The operator of the heavy digging equipment, an agent of Defendant TransCanada, then physically shoved Plaintiffs in an attempt to force them away from the heavy digging equipment.

At around 11:00 a.m. a representative of Defendants Transcanada who appeared to not be a laborer arrived and began recording Plaintiffs after sending away the workers, who complied with his directions.

At around 12:00 p.m. three Wood County Sherriff's Deputies and one Police Officer from the nearby town of Pittsburg, TX arrived. These four law-enforcement officers, without issuing any instructions or notice, ran towards and and tried to grab members of the community who were there, with the permission of David Daniels to show support for

Plaintiff's action. It is likely that the intent of these law enforcement officers was not to arrest any of these people whom they pursued, since no grounds for such arrest existed, but simply intended to force potential witnesses away from the Plaintiffs so that these officers could proceed to take the actions below with relative impunity.

These officers began by interrogating Plaintiffs as to the nature and motivation of their activities, to which Plaintiffs identified themselves as peaceful protestors, a position Plaintiffs would repeatedly emphasize throughout the events that followed. Plaintiffs cooperated with all interrogation and did not refuse to answer any questions by these officers. They explained that TransCanada's right to install the pipeline at this location at this time, was the subject of an ongoing legal dispute in Wood County, and was unclear, and that therefore, Plaintiffs actions to delay it were not clearly unlawful. Plaintiff Craft-Rendon asked the apparently senior officer if Plaintiffs were legally detained, and these officers refused to answer the question as to Plaintiff's legal status, joking, "You seem to have detained yourselves."

The Pittsburg Officer examined the pipe containing Plaintiffs' hands, which involved forcefully jerking Plaintiffs' hands around within the pipe, causing them pain, which Plaintiffs verbaly expressed, took a conventional knife and cut away the tape from the pipe, and then expressed surprise that the pipe was not made of plastic. Apparently, this officer expected that his action would cut through the pipe without regard to what injuries this might cause had he been correct.

After this, the apparently senior officer asked, for the first time, that Plaintiff's disengage themselves voluntarily. Plaintiffs refused, reiterating that they were peaceful protestors, and that their delay was required so that the courts could process the landowner's claim for review of Defendant TransCanada's installation of said pipeline.

After taking Plaintiff's IDs, which Plaintiffs willingly provided, and leaning that Plaintiffs had no open warrants for their arrest, these officers resumed interrogation, now turning to the personal lives of Plaintiffs, with a focus on questions clearly aimed at humiliating them, (to wit: asking Defendant BeBe about scars they found on her body which they observed by physically touching her) and at this time, both Plaintiffs chose to invoke their rights to remain silent which Plaintiff Craft-Rendon did by saying, "I have the right to remain silent," and Plaintiff Bebe did by simply refusing to speak altogether.

At or around 2:00 p.m. an apparently senior and powerful representative of Defendant TransCanada appeared and called the nearby TransCanada employees around him, and sent one of more of them away, and then began a huddled discussion, out of Plaintiffs' earshot, with the four law-enforcement officers. Immediately after this discussion, the apparently senior law-enforcement officer approached Plaintiffs, told Plaintiffs that they were trespassing and that if they did not immediately remove themselves, they would be placed under arrest. Plaintiffs again reiterated that they were peaceful protestors and that their actions were necessary to allow the courts time to process the property claim, and that they would not remove themselves for this reason.

At that time, the senior officer told Plaintiffs that they were under arrest (though he did not say for what offense), and Plaintiffs again restated that they were peaceful and invoked their right to remain silent (this time both Plaintiffs said, "I have a right to remain silent." At this time, the City Police Officer began twisting the free arm and wrist of Plaintiff Craft-Rendon, causing pain to Craft-Rendon. One of the Sherriff's Deputies began to tug on the pipe, pushing it into Craft-Rendon, causing pain to Craft-Rendon.

At this time, the Pittsburg Officer instructed the Sherriff's Deputy pushing the pipe into Craft-Rendon's chest that he should instead take over twisting Craft-Rendon's free arm, so that that Pittsburg officer could then roll the pipe back and forth in different directions so as to twist Plaintiff's restrained arms, causing them pain which both Plaintiffs vergbally expressed. This Pittsburg Officer then said, flippantly, "I hope you don't have carpal tunnel," to which Plaintiff Bebe responded that she does have carpal tunnel, to which he responded, "I guess you shouldn't be here," and continued twisting.

After three to four minutes of this, the Pittsburg Officer stopped, and began speaking with the apparently most senior Sherriff's Deputy, who then told the Sherriff's Deputy twisting Craft-Rendon's free arm to stop and go retrieve pepper spray. That officer then handcuffed Plaintiff Craft-Rendon's free arm to the same heavy digging equipment behind his back in a position calculated to cause pain and cut off circulation, both of which Craft-Rendon verbally expressed.

When the officer's returned the Pittsburg Officer showed Plaintiffs a can of pepper-spray. Plaintiffs immediately turned away their faces and closed their eyes. The senior Sherriff's deputy then said, "look at them. They've been pepper sprayed before." Neither Plaintiff had been. The Sherriff's deputy, who until this point had done nothing, together with the Pittsburg officer, then squeezed the can of pepper spray into the pipe and sprayed on either end onto Plaintiffs arms and fingers which had been heavily scraped by the prior action of twisting the pipe. This caused extreme pain to both Plaintiffs. Though both Plaintiffs held their breath to avoid inhaling the pepper spray, the Sherriff's Deputy who applied it, did not, and inhaled some of the pepper spray, apparently causing pain and coughing to that Sherriff's Deputy, causing all of the officers to retreat away from Plaintiffs.

After about ten minutes, the Pittsburg Officer drew his Tazer, (trademark), and showed it to Plaintiffs. He then said, "This is my Tazer. I'm going to say Tazer three times, and then Tazer you for one second, and say it again, and then again for five seconds, and keep doing it until you comply." Plaintiff Craft-Rendon again stated that he was a peaceful protestor, and asked for a lawyer. At this time, the Pittsburg Officer, ignoring this statement, began saying, " Tazer, Tazer, Tazer," and Tazered Craft-Rendon for one second in his left-thigh. That officer then asked Craft-Rendon if he would comply, and Craft-Rendon again stated that he was a peaceful protestor. That officer then said, "Tazer, Tazer, Tazer" and Tazered Craft-Rendon on his left bicep for five seconds. At this time, the senior, powerful TransCanada representative asked the senior Sherriff's deputy why

the Tazer was not working, and the Senior Sherriff's Deputy replied that it could be that Craft-Rendon's body-fat prevented it from working properly.

For the following five to ten minutes, the senior Sherriff's deputy began to threaten further harm to Defendant Craft-Rendon by continued Tazing if Defendant Bebe did not comply. Then, the Pittsburg Officer threatened to Taze Bebe if Craft-Rendon did not comply, and implied that Craft-Rendon would be failing in his responsibilities as a man if he did protect Plaintiff Bebe, a woman, by complying.

Next, the Sherriff's Deputy, who had applied pepper spray, drew his Tazer, began counting, "Tazer, Tazer, Tazer," stopped, and asked the Senior Sherriff's Deputy, "Do I really have to be the one who Tazers her?" The Senior Sherriff's Deputy stared at this Sherriff's Deputy without speaking and he began again counting, "Tazer, Tazer, Tazer," and then stopped again to say to Plaintiff Bebe, "Please don't make me do this." Hearing nothing from Bebe, he started a third count of, "Tazer, Tazer, Tazer," and began shocking her for one second in her right thigh, clearly causing Bebe intense pain. The Senior Sherriff's Deputy then asked Bebe if she would comply, and Bebe stated that though her fingers were numb, she would try. She attempted to comply, but could not because of limited control of her fingers, and the Pittsburg Officer, after a few minutes said to Bebe, "I know you're not really trying. We will keep Tazering you until you comply. We won't Tazer him [Craft-Rendon] because he's too mule-headed for it to work, but we will Tazer you." Bebe said that she had a heart condition (she has an arrhythmic heart beat), and this was ignored.

At this point, knowing that Bebe was unable to comply Plaintiff Craft-Rendon said that he would comply, but that they would need to help him move the pipe since it had been twisted to the point that it would be difficult to release. The Pittsburg Officer lifted the pipe, and Craft-Rendon released his arm. The officers then tugged the pipe, pushing it into Bebe's chest until Craft-Rendon could be forced out.

Once out, the senior TransCanada representative said to both Plaintiffs, something to the effect of "We're sorry that it had to be like this, but it was necessary for us to do our jobs." Then he thanked the Senior Sherriff's Deputy "For his good work, as always," and that Deputy responded, "Don't worry. Next time, we'll break the pepper spray out in the first ten minutes."

At this point, both Plaintiffs were arrested, and charged with trespassing and resisting arrest. Plaintiff Bebe, roughly two weeks later, was rearrested and rebounded on a felony charge of use of a criminal instrument, which the District Attorney of Wood County chose not to pursue an indictment or further prosecution of. Both Plaintiffs pled guilty to trespassing and received a $300 fine, which they paid. The charge of resisting arrest was dismissed.

The two men who have been referred to herein as representatives of TransCanada, were employees of two other companies. Both of these companies provided various services to Defendant TransCanada pertaining to pipeline management and construction, and among

the duties of these companies was the management of security for the pipeline construction projects. TransCanada had contracts with these companies that detailed the nature of their relationship to TransCanada, and these contracts in both cases state that these corporations are independent contractors, and not employees or agents. However, these contracts also give TransCanada a very high degree of detailed control over how these companies perform the work. TransCanada reserved the right to inspect the performance of these companies, and kept to its sole discretion whether the work was performed in a completed manner. TransCanada reserved the right to remove any employee of these companies temporarily or permanently for any reason at all. These contracts refer to detailed procedures and plans for a wide variety of aspects of job performance, including work-safety protocols, sexual harassment policies, and a high degree of oversight by TransCanada. They functioned as TransCanada's agents during the events described herein, and perhaps at other times as well.

Within the two years prior to this event, various representatives and agents of TransCanada met with state and federal law enforcement agencies around the country, and helped to plan law enforcement tactics to be used against protestors resisting the construction of the Keystone XL Pipeline, a major project being implemented by TransCanada, and it was that project in particular that Plaintiffs were seeking to disrupt by their actions discussed above. The police tactics which were discussed at those meetings, included a wide variety of actions violative of the constitutional and civil rights of those protestors. TransCanada's representatives actively participated in those meetings.

**COUNT 1 – 42 U.S.C. §1983: EXCESSIVE-FORCE CLAIM AGAINST WOOD COUNTY**

The officers acted willfully, deliberately, maliciously or with reckless disregard for Plaintiffs' established constitutional rights against unreasonable seizure, cruel and unusual punishment, and due process of law by their acts of physical harm to Plaintiffs, and that this decision was carried out with the actual authority of Wood County and Wood County Sherriff's Department, within the general authority of those who inflicted these physical harm, in furtherance of those Defendants' business, and was for the accomplishment of the object for which those persons were hired by those Defendants.

**COUNT 2 – 42 U.S.C. §1983: *MONELL* CLAIM AGAINST DEFENDANT WOOD**

Defendants Woods's policy or custom enabled its agents and employees to act with deliberate indifference to Plaintiffs' constitutional rights by their acts of physical harm to Plaintiffs, a violation of Plaintiffs' rights against unreasonable seizure, cruel and unusual punishment, and due process of law, which was in keeping with their policy or custom.

In particular, Wood County had been acting in keeping with an established custom or policy of using excessive force against protesters resisting the construction of the Keystone XL Pipeline.

**COUNT 3 – 42 U.S.C. §1983 (Other violations of constitutional rights)**

**COUNT 4 – STATE-LAW CLAIMS**

**DAMAGES**

As a direct and proximate result of the defendants' actions, Plaintiffs suffered the following injuries and damages.

A. Medical expenses in the past and future.

B. Mental anguish in the past and future.

C. Disfigurement in the past and future.

D. Physical impairment in the past and future.

E. Lost earnings.

F. Loss of earning capacity.

G. Physical pain and suffering.

## COUNT 5 – AIDING AND ABETTING BY DEFENDANT TRANSCANADA

The acts of physical harm described above by Defendants Wood, amount to an actionable tort. Defendants TransCanada, by and through their agents, had knowledge that the activity of Defendant Woods' agents constituted a tort. The agents of Defendants TransCanada had the intent to assist the agents of Defendants Wood in committing that tort, and gave those agents assistance or encouragement by their discussion and planning thereof, and this assistance or encouragement was a substantial factor in causing the tort, and the resulting injuries. Though it is not known at this time exactly what what TransCanada's agents said Wood County's agents, the circumstances strongly support the inference that TransCanada's agents intentionally encouraged, contributed, and induced Wood County's agents to perform the acts described herein.

## COUNT 6 – CONSPIRACY BETWEEN DEFENDANT TRANSCANADA AND DEFENDANT WOOD

The agents of Defendants TransCanada and the Agents of Defendants Wood formed a combination of two or more persons by their discussion and planning of physical harm to Plaintiffs. The object of this was to accomplish an unlawful purpose or a lawful purpose by unlawful means. The members of this combination of persons had a meeting of the minds on the object or course of action through those discussions. At least one of those members committed

acts causing physical harm to Plaintiffs discussed above, which was an overt act to further the object or course of action. Plaintiffs suffered injury as a proximate result of that wrongful act.

The acts of excessive force, perpetrated by the agents of Wood County, discussed above, came about as a result of a meeting of the minds. This is strongly suggested by the circumstances surrounding the acts complained of herein.

## ACTUAL AUTHORITY AND RESPONDEAT SUPERIOR OF DEFENDANTS TRANSCANADA

Defendants TransCanada intentionally conferred authority on its agents, those non-police officers who were present at the incident described above, who helped plan the acts causing physical harm to Plaintiffs. Defendants TransCanada intentionally allowed those agents to believe it had authority, or through lack of due care, allowed those agents to believe they had authority. The actions and conspiracies described above by the agents of Defendants TransCanada were within those agents' general authority, in furtherance of Defendants TransCanada's business, and for the accomplishment of the object for which those agents were hired.

Specifically, those agents were acting in furtherance of their duties to provide security to the pipeline in keeping with established TransCanada policy, as laid out in the agreements between their direct employers and TransCanada. Those agreements, because of the high degree of control which TransCanada retained over the work to be performed, established that those companies were serving as employees of TransCanada for purposes of law, and that those agents were therefore employees of TransCanada for purposes of vicarious liability.

## ATTORNEY FEES

Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §1988 (b)

**JURY DEMAND**

Plaintiffs hereby demand a jury trial and pay the required fee.

**PRAYER**

For these reasons, Plaintiffs ask for judgment against defendants for the following

A.  Actual damages;

B.  Punitive damages;

C.  Reasonable Attorney fees;

D.  Postjudgment interest;

E.  Costs of suit;

F.  All other relief the Court deems appropriate.

Respectfully submitted,

_____

Burke Austin Moore
State Bar No. 24076570
11200 Broadway St. #2743
Pearland, TX 77584
Tel: 806-679-3005
Fax:888-253-3090
cogitheum@mac.com